Good morning. Good morning. May it please the court, my name is Kim DeMarshi and I represent the estate of Foster Appellant in this case. This case has one common issue with the one that you just discussed and one different issue, so I'm going to start with the different issue since we haven't talked about it yet. I aspire to save five minutes. Okay, thank you. At issue in the Foster case is litigation against the estate that is not just a claim for damages. It's a claim for restitution and a request for a constructive trust. And the reason that that matters, the reason that this isn't just a case of can we figure out how much the amount of the deduction should be under the deduction section of the regulations, is that what was at issue in the Foster case was a claim that could in fact have deprived the estate of its entire interest in the property at issue. And the reason that that matters is that the regulations that tell us what's in the estate, and specifically I'm looking here at both 26 U.S.C. 2033 and the supporting regulation, which is 26 CFR 20.0-2B2, what we value when we do an estate tax is not the property in the estate, but the interest in that property that passes from the decedent to the decedent's heirs. And that might sound like a very technical distinction, and it kind of is, but there's a constitutional reason for it. Pursuant to the Constitution, direct taxation of property must be apportioned. And the only reason that the estate tax is constitutionally valid is that it doesn't tax the stuff in the estate. It taxes the transfer of interest in that stuff. In most estates — Well, you're saying we should just ignore the 16th Amendment, the little thing? But it isn't an income tax case. These are excise taxes on the transfer. Which sounds technical but matters in the case where that interest isn't a pure, unencumbered, clear interest. If it's a case where it's a house and everybody agrees that you own it, or it's stocks and everybody agrees that you own it, it's pretty easy. What you transferred is your interest in that thing. We value that thing. We tax accordingly. But in this case, Counsel, you have some fairly fungible assets, and a willing buyer, willing seller, would probably part with them in roughly the same amount of money. The lawsuit doesn't change the value of those assets, right? It does not. The lawsuit puts a cloud on the title of those assets. It does as to your client. But the reality is that the asset itself is not changed in its value, right? That is correct. And that's why it matters that what's taxed is my client's interest in it that she can pass to her children, not the actual assets that are sitting in the trust. That's why this is the kind of case where it matters. What case would you refer us to for this concept that because this is an excise tax that you cannot tax, in this case, the fair market value of the asset, but rather only what your client's estate might expect to receive? There are a handful of tax court cases that we've cited to you, and they all involve interests in property where there's some kind of title problem with the interest. The Dickerson case is a lottery ticket case where a bunch of people said they chipped in for the lottery ticket, and one person holds it, and then it turns out to be the winning ticket, and the other folks say, hey, no part of that is mine. When the holder of the lottery ticket then dies, she wasn't taxed on the full value of the lottery ticket. It was discounted because of the risk that those other individuals might prevail in challenging her ownership of it. Henderson is a case involving an insurance contract where there were allegations that the insurance contract had been fraudulently procured and therefore wouldn't, in fact, be owned at all. Lemon is a case where there is a trial court judgment. The estate was a judgment creditor, but that judgment was on appeal and could have been entirely wiped away on appeal. Sharp is my favorite. It's the Orange Grove case. Help me with this, though. My understanding of this case is that the Keats lawsuit didn't put a cloud on the title to the trust assets. It wanted to. As of the time of death, it hadn't yet succeeded in doing so, but it had a live claim with an appeal pending. It was actively pursuing a restitution claim that sought constructive trust as a remedy. So you. Actually, Keats was seeking a constructive trust on the proceeds of the stock sale, and what had happened was that the stock was sold and put immediately into the trust. And I can give you the record citations on that. So when you had the freeze in place, could the assets within the trust be exchanged, for example, one type of bond to another or from bonds to cash or vice versa? We don't have any record information on that. What we know about the freeze is that the decedent wasn't allowed to take things out, except for there's a remark that one or two times in response to requests it had been lifted. But it wouldn't matter if the form of the assets in the trust could be changed from bonds to cash or et cetera, because what's being transferred is her interest, and it's her interest that's subject to the constructive trust claim. And the handy thing about constructive trust for plaintiffs, when they can get it, is that they can follow the trail. If the stock proceeds are sold and cash is put into the trust and then the trust used that cash to buy stocks and then the stocks are sold, constructive trust says, actually, that's my money you've been investing, and now that I succeed in proving constructive trust, transfer title to that money to me. That's why it's the interest. The third issue that you had in the last case, is there a basis for a deduction with a potential liability? Yes and no, and I don't mean to be evasive, Your Honor. This case is different from the last case because there are two steps to the estate tax inquiry. Step one is we figure out what you owned. And what we do, we look under 26 U.S.C. 2033 and Regulation 20.02b2. It's we value your interest. It's our contention that the value of Mrs. Foster's interest in the trust had to be discounted, because if you were a hypothetical buyer stepping into her shoes with the Keech litigation still out there, you wouldn't pay 100 cents on the dollar because there was a risk that the Keech plaintiffs would win and you'd get nothing. Several candidates taking effect to deduction. No, no, no, no, no. We're making alternative arguments, Your Honor. We believe it comes off in phase one of the tax calculation that we were entitled to discount the value of her interest due to the risk that the litigation would in fact strip her of that interest. But in the alternative, if we couldn't do it that way, then we were entitled to deduct it, and then it's just like the Saunders case that you just heard where there's actual litigation that just has to be valued by experts. I have a second question. Whether it's a discount or a deduction, is the claim reasonably estimable? It does not, Your Honor, because the regulations are different. The reasonably determinable language that you're referencing only applies to deductions. It only applies in step two. Step one says value the interest. And the case law is uniform that we value the interest as of the time of death based on the information available to us at the time of death. That's why when it's a claim owned by the estate, we value that as of the time of death, even though that means we have to have experts come in and tell us what might happen in the 10-year piece of litigation. The reasonably ascertainable part only applies if it has to be handled in the second step. I want to change the focus just a little bit here because my impression is that you're applying this freeze as if it applied to all of the trusts and all of the assets. And my understanding is that Ellen Foster wasn't entitled to unrestricted principal withdrawals from trust number two in any event, and there was no evidence that the freeze applied to trust number one. And James Carroll, the attorney in his deposition, indicated that the freeze didn't apply to all assets and that it wasn't complete, wasn't absolute, and acknowledged that the freeze was lifted on one or two occasions. So if that is correct, doesn't that, in other words, doesn't the argument leak? Even taking everything you say at face value, it simply doesn't apply under the best of circumstances to most of the assets, maybe to some under your theory. How are we supposed to treat that? Okay. I apologize I have a somewhat complicated answer. I'd like to start with the factual issues because I disagree with that characterization of the record evidence. The individual from Northern Trust said, we put a freeze on her assets. He never said it was limited to trust three. Now, under the terms of the trust, she couldn't have taken money out of one or two either, but he didn't say it was limited. No one said it was limited. The tax court came up with that on the tax court. What did the documents say where the freeze was asserted? The evidence in the record, there are two pieces of evidence in the record about the freeze. There's a memo that's written to Mrs. Foster telling her about what she can do, and that's only about trust three because trust three is the only one she could have touched. And then there are four pages of deposition testimony from the individual at Northern Trust, and he just says, we have put a freeze on the trusts. He doesn't split it out between trusts one, two, and three. And the reality is, a lot of this money is in trust two. If Northern Trust is doing what he said it was doing, which is protecting itself in case the constructive trust action succeeds and somebody comes after that money, there's no reason to believe that when he said it's on all the trusts, it really would only have been on one trust. They wouldn't have let money go out of the others because the point of the freeze is to protect them. But the reality is, even if Northern Trust hadn't been so cautious, that doesn't change the litigation risk that my client's ownership interest is subject to, and because what's transferred is her ownership interest, we're entitled to look at the value of that ownership interest as though a hypothetical buyer bought not the items in the trust, but her interest in them. It's sort of a legal fiction, which is a little tough, but that's what the law tells us we have to do. Is there any litigation that itself purported to put a freeze on your client's interest? The Keech plaintiffs had not sought a stay. There's nothing that would have required them to do it at that point in time, and prudentially, Northern Trust had frozen the assets. Had Northern Trust lifted its freeze, they could have. Basically here, you don't have a pending lawsuit that would tie it up. You have a cautious trust company that said, with respect to the trust that Mrs. Foster was entitled to get things from, that we've got some kind of freeze here, ill-defined. Did anybody from her side probe what she could get? Does the record show anything about that? The record shows a memo advising her that she couldn't take things out, and the record shows testimony that there was a freeze with it lifted on a couple of occasions, and no one, including the IRS, asked, well, what were those occasions? It certainly wasn't emptying the trust. I have to respectfully disagree with Your Honor that there was not litigation pending. There was a timely filed appeal to the Seventh Circuit from the judgment adverse to the plaintiffs and in favor of my clients. I qualified that by saying litigation that would have frozen the assets directly. The district court litigation wouldn't have frozen the assets either, absent a request for such a stay, which no one got. But that doesn't mean no one could have. And, again — Do you want to save any time for rebuttal? I do. Okay. Thank you, Your Honor. Thank you. Your Honor, good morning. May it please the Court. Randolph Hutter for the Commissioner. I would like to draw the Court's attention to the excerpts of record, page 2138, 2138. It is a page from the amended complaint where the relief sought by the plaintiffs in the Keech lawsuit, it states that they seek imposing a constructive trust and entering judgment for restitution of the property or disgorgement of the proceeds of the property. The Keech plaintiffs were not seeking these assets as those assets. They were seeking the money that they represented, and there was nothing in the lawsuit or in the facts or any of the other situations that would allow or justify a discount being applied to these assets for estate tax purposes. If the estate had bonded judgment, potential judgment, exchanged all the assets in the process for a bond, there would be no discount. Right. That's — I think that's true, but I — Because the bond would then stand as — For the assets. Well, any potential judgment. For the assets. But there would still, I think, be nothing — exactly. That's true. And so there's nothing preventing the trust from selling the assets. And two of the key facts — As long as it's a fair consideration. Exactly. And there's nothing indicating that the willing, hypothetical willing buyer and hypothetical willing seller wouldn't basically exchange these publicly traded assets for their fair market value with no discount. And, in fact, two things really tell this whole story. Number one, some trusts were sold by the trustee while the lawsuit was pending at no discount. And we've cited the record and we've put in our supplemental excerpts of record, pages from the transcript of the trial that say just that. Number two, the amended complaint in the lawsuit sought the restitution of the property or proceeds from the property. Those two facts right there, to me, tell the whole story. There's no justification for a discount on these assets. Can you give me an example of a disputed claim that the commissioner or tax court found was valued with reasonable certainty for purposes of a deduction? So we're going back to the 2053 issue, yes. The Propster case involves one where the estate at the time considered the claim against the estate to be disputed and said so. And yet there was a settlement later on that was allowed to be the value for estate tax purposes. And that's not what we have here. Well, we do have a settlement later on that shows that the value is absolutely nothing. Your question earlier on was can any disputed claim be deducted? If it's disputed, if it's contingent, can none of them be deducted on a return? And my colleague, Ms. Rubin, of course, pointed out the most important thing is that, well, in hindsight and post-death, many of those things are going to get settled and they're going to get credit for any claim that actually comes out of the estate. The essential or one of the essential elements of this, of course, there are two, not only ascertainable with reasonable certainty but will be paid. Show the commissioner that there is a likelihood, strong likelihood, that this claim will be paid. Not just it's possible, it's contingent, we'll see. Now, that's not good enough. There's a different standard for including assets in the estate. Then you've really got a property interest. But for deducting claims, you have to show that it will be paid. And we've got a two-year period after the point of death where you might show that. And so there's a safety net there. And in this case, and in this court's case law, you see you can look at those post-death events, and here we know that the claim was worthless. In fact, we knew the claim was worthless basically on the date of death. Don't forget that the district court awarded summary judgment against the plaintiffs in favor of the defendants before Mrs. Foster died. So there was a high, extreme likelihood that there – If you go by percentages, then what happens on appeal? Well, I don't know. And, of course, I don't want to say it was guaranteed certainty. Of course, that would never be overturned, which is the way appellees like to look at cases. But I – But it's yours to lose at that point. Of course. That, I mean, an appellant has already lost. Of course. And we've got the added benefit where the regulation specifically says you can look at post-death events. And if they'd won something, if they'd won $20, $30, $40 million, they would have gotten that deduction. No, we would not have been able to further contest the value at that point. And it just was not a concrete enough claim at the date of death in this case, very similar to Saunders, that they can take that deduction. And there's no justification for a discount on the assets and valuing them as an asset. We don't appear to have any additional questions here, Cree. Thank you, Your Honor. I won't take your time away, but you don't need to make any other comments. Very well. I won't overstay my welcome or belabor the points. Thank you very much. Thank you. I'd like to start where we just left off. And, in fact, I'd like to start, Judge Callahan, with your questions at the end of the Saunders argument. You were asking about Shapiro and what it held. Here's what's interesting about Shapiro. Shapiro doesn't squarely hold that a claim against the estate that's still being litigated and is therefore inherently nebulous can or can't be deducted. But if the trial court here was right in holding that, because we're not sure how this litigation is going to come out and different experts say different things, that means I can't value it. If that was true, there's no reason to remand in Shapiro. What happened in Shapiro was a remand to try to come to a valuation, which suggests that if there is a claim against the estate that's somewhere in the litigation process, we at least try to ascertain that value if we can do so with reasonable certainty. And what happened in this case is that the trial court effectively said, I have three different experts. They don't come to the same number. Therefore, there's no reasonable certainty. That's not actually how we do valuation in the law generally. That would be a relatively destructive precedent. But you are saying, I gather, that Shapiro still has vitality as to that issue. I believe that it does. And the only other point that I would make is to look carefully at the record in this case about what the experts actually said. The tax court here seemed to think there was a huge difference, and there really wasn't. The IRS said 15 to 20 percent litigation risk. So did we. And then the difference was just whether you itemized the transfer restrictions as a separate percentage deduction as we did at trial, or whether you lumped them together as our experts did when we submitted the return. Thank you for your time. Well, I would like to thank all the counsel on the tax cases for well-argued, and not that any case is any more important than any of the others because they aren't. But I think you all made it interesting in your arguments, which isn't as easy in tax cases as some of the other cases. So I think that speaks to counsel being able to break it down and make it interesting. And so I think that you all deserve compliments on that point.
judges: Hellerstein, Callahan, Smith